THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANN W. EASLEY BRYANT,

    Plaintiff,

v.                                                                            No. CIV 20-1266 RB/SMV

WASHINGTON FEDERAL BANK, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ann Easley Bryant had savings and checking accounts with Defendant Washington Federal Bank (WFB or the Bank).[1] Bryant alleges that in 2015 and 2016, large amounts of money were withdrawn or transferred from her savings account without her knowledge or consent. She seeks to hold WFB liable for conversion. WFB moves to dismiss Bryant's claim. Bryant, in turn, moves for default judgment on the basis that WFB's motion to dismiss was untimely. For the reasons discussed in this Opinion, the Court denies Bryant's motion for default judgment and grants in part WFB's motion to dismiss.

**I.**     **Factual and Procedural Background**

Bryant opened a savings account with WFB on June 26, 2015. (*See* Doc. 26-A at 1 (signature card for savings account ending in 3819); *see also* Doc. 13 (2d Am. Compl.) at 8–9[2] (referencing savings account ending in 3819).) She received statements at her home address for the first several months. (2d Am. Compl. at 8–9.) In April 2016, Bryant realized that she had not

---

[1] WFB asserts that Bryant has misidentified it as "Washington Federal Bank, Inc." (Doc. 26 at 1 n.1.) "Washington Federal Bank, Inc. is not an entity affiliated with Washington Federal Bank and, upon information and belief, has never existed." (*Id.*) Bryant points to documentation she found describing the Bank as Washington Federal, Inc. (Doc. 31 at 9.) The Court finds that the corporate name discrepancy has no bearing on this matter.

[2] The Court uses the CM/ECF page numbering for the Second Amended Complaint rather than the internal page numbering.

received several statements and contacted the Bank. (*Id.* at 9.) The teller told her that the statements had been sent to an old address and insisted that Bryant had requested the address change. (*Id.*) Bryant, who disagreed that she requested the address change, corrected the mistake and requested duplicate statements. (*Id.*) Upon reviewing the printed statements she realized that "many were missing, but [Bryant] was sure that her savings account was fine." (*Id.*)

In the summer of 2019, Bryant realized that there were a number of unauthorized withdrawals made from her savings account, several of which occurred during the time period when the statements went to the wrong address. (*See id.* at 9–10.)

1. September 11, 2015: $10,000 was transferred from Bryant's savings account to her checking account ending with 0238 (the "0238 checking account"). (*Id.* at 9.)

2. December 8, 2015: $30,000 was withdrawn from her savings account at a WFB branch in Yuma, Arizona. (*Id.* at 10.)

3. February 17, 2016: $37,000 was withdrawn from her savings account at the same Yuma branch. (*Id.*)

4. January 24, 2017: $3,000 transfer from the savings account to the 0238 checking account, followed by an ATM withdrawal from the 0238 checking account on the same day. (*Id.* at 11.)

5. March 30, 2017: $2,200 "descriptive withdrawal" from the savings account. (*Id.* at 12.)

6. July 6, 2017: $49.43 point of sale withdrawal from her solo checking account ending in 2296 (the "2296 checking account") at a Family Dollar in California. (*Id.* at 12–13.)

      7. <u>August 3, 2017</u>: $1,700 "descriptive withdrawal" from the savings account. (*Id.* at 12.)

    Bryant states that she shared the 0238 checking account with her daughter, Leila (also known as Delia) Bryant. (*See id.* at 9; *see also* Doc. 31 at 6.) Bryant "believes that there were many unauthorized transfers to [the 0238 checking] account which were then cashed out with a secret ATM card/debit card unknown to [her]." (2d Am. Compl. at 9.) Bryant admits that she "had been traveling extensively and had not reviewed her bank statements thoroughly, yet she was extremely confident with [WFB] . . . ." (*Id.* at 10.)

    Regarding the December 8 and February 17 withdrawals, Bryant alleges that she visited the Yuma branch on those dates and withdrew $4,000, but a teller or manager "increased the amount of the withdrawals and converted the funds to themselves or someone else." (*Id.*) She alleges that pursuant to certain unspecified rules, "[a] prior request of up to a week must be made for . . . large withdrawal[s]." (*Id.*) She never made such a request for the December 8 or February 17 withdrawals. (*See id.*) She also asserts that "[t]here should have been a manager's signature" and "a transaction report filed with the IRS as per 31 CFB. Section X, 1010.310-3147[.]" (*Id.*)

    Bryant asserts that "descriptive withdrawals" are defined as "transaction[s] when an electronic funds transfer took place." (*Id.* at 12.) Bryant contends that there should be no electronic or descriptive withdrawals "[s]ince [she] always banked in person with her savings account . . . ." (*Id.*) Bryant is unclear about the July 6, 2017 charge from her 2296 checking account but "believes that this was some sort of transaction (withdrawal) made by an employees(s) of [WFB] to bring her account to a zero balance so that it could be closed – without her knowledge or consent." (*Id.* at 13.) Bryant contacted the Bank about the unauthorized transactions in the summer of 2019, but the Bank did not provide any relief. (*Id.*)

Bryant signed Signature Cards when she opened her accounts with WFB. (*See* Doc. 26-A.) The Signature Cards provide that "[t]he Account Owner(s) . . . acknowledges the receipt of a copy and agrees to the terms of the following documents: Schedule of Fees and Services[,] Truth in Savings Disclosure[, and] Account Terms and Disclosures." (*Id.*) "Use of the account is governed by this Signature Card[ and] by the Disclosures which are incorporated herein by reference . . . ." (*Id.*)

WFB submits the Personal Deposit Account Agreement and Disclosures (Account Agreement) that became effective on November 16, 2015. (*See* Doc. 26-B at 2.) The Bank points to language in the Account Agreement that provides:

> You must notify us within 60 days of the date your Account statement is made available if you believe there is an error, forgery or other problem with the information shown on your Account statement. You agree not to assert a claim against us concerning any error, forgery or other problem relating to a matter shown on an Account statement unless you notified us of the error, forgery or other problem within sixty (60) Calendar Days after we made your statement available to you.

(*Id.* at 4.)

Bryant now brings suit against WFB for conversion. (*See* 2d Am. Compl.) Bryant moves for default judgment and WFB moves to dismiss. (Docs. 26–27.) The Court will take up Bryant's motion first.

**II.    The Court will deny Bryant's motion for default judgment.**

Bryant argues that WFB failed to timely respond after service and seeks default judgment. (*See* Doc. 27.) Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Tenth Circuit does not favor default judgments and believes that they should be used sparingly. *Harvey v. United*

*States*, 685 F.3d 939, 946 (10th Cir. 2012); *Petersen v. Carbon Cnty.*, 156 F.3d 1244, at *4 (10th Cir. 1998); *Katzson Bros., Inc. v. U.S. E.P.A.*, 839 F.2d 1396, 1399 (10th Cir. 1988).

Here, Bryant filed her Second Amended Complaint on September 9, 2021. (2d Am. Compl.) The Court screened the complaint, dismissed Defendant Brent Beardall for failure to state a claim, and ordered the Clerk of the Court to notify WFB of the lawsuit "and request that the Bank waive service pursuant to [Federal Rule of Civil Procedure] 4(d)." (*See* Doc. 18 at 3.) The Court noted that if WFB did not "return[] the waiver of service within 45 days of entry of this Order, Bryant must file a motion for service if she wants officers of the Court to serve process on the Bank." (*Id.*)

Bryant moved for service on December 10, 2021, and the Court granted the motion on December 15, 2021. (Docs. 20–21.) WFB was served with process on February 8, 2022, and counsel for the Bank entered their appearance on March 2, 2022. (*See* Docs. 22; 25.) WFB filed its motion to dismiss on March 7, 2022. (Doc. 26.) Rule 12(a)(1)(A)(i) provides that "[a] defendant must serve an answer . . . within 21 days after being served with the summons and complaint . . . ." A defendant must file a motion asserting defenses under Rule 12(b) before filing a responsive pleading. *See* Fed. R. Civ. P. 12(b). Because WFB filed its motion to dismiss more than 21 days after it was served, its motion was untimely.

Regardless of the delay in the Bank's motion, the Court finds that default judgment is not warranted. "Courts disfavor default judgments because 'the court's power is used to enter and enforce judgments regardless of the merits of the case, purely as a penalty for delays in filing or other procedural error.'" *Pinon v. Watkins*, No. 12-CV-0209 RB/RHS, 2012 WL 13076242, at *1 (D.N.M. Aug. 6, 2012) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)). "Because strong policies favor adjudication on the merits of a

5

claim, default judgment must be 'viewed as available only when the adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Cessna Fin. Corp.*, 715 F.2d at 1444). WFB has not been unresponsive, merely tardy, and Bryant was not prejudiced by the delay. The Court will deny the motion for default judgment.

### III. The Court will grant in part WFB's motion to dismiss.

#### A. Legal Standards

Plaintiff's "pro se . . . pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers . . . ." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). The Court may not, however, "serv[e] as the litigant's attorney in constructing arguments and searching the record." *Id.* (citing *Hall*, 935 F.2d at 1110).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

"[W]hile ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect . . . ." *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (citation omitted).

6

Documents that a plaintiff refers to in the complaint fall into this limited exception if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 298 F.3d 936, 941 (10th Cir. 2002) (citation omitted). In this case, Bryant referenced a WFB policy that requires customers to submit complaints within 60 days of an error. (*See* 2d Am. Compl. at 7.) The Bank submitted the Account Agreement and Signature Cards, both of which are relevant to the 60-day policy referenced in Bryant's Second Amended Complaint. (*See* Docs. 26-A–B.) Bryant does not dispute the authenticity of the Account Agreement or Signature Cards. (*See* Doc. 31 at 6 (agreement that she signed an agreement with the Bank when she opened her accounts).) Accordingly, the Court will consider the documents. *See Tilley v. Mountain Am. Fed. Credit Union*, No. 217CV01120JNPBCW, 2018 WL 4600655, at *6 (D. Utah Sept. 25, 2018) (taking judicial notice of the opt-in agreement because it was referenced in the complaint).

    **B.**    **Analysis**

WFB argues that Bryant's complaint should be dismissed for three reasons: 1) the parties' contract precludes the claim; 2) she fails to allege that a Bank employee exercised dominion and control over the money; and 3) she fails to name an indispensable party. (*See* Doc. 26 at 5–8.) The Court begins by examining whether Bryant failed to name an indispensable party.

    **1.**    **Bryant has not failed to name an indispensable party.**

WFB argues that Bryant's daughter is an indispensable party to this lawsuit and that the claim should be dismissed due to Bryant's failure to name her daughter. (Doc. 26 at 7.) Under Federal Rule of Civil Procedure 12(b)(7), "the court may dismiss a case for failure to join a necessary and indispensable party under rule 19." *Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1181 (D.N.M. 2010). "In deciding whether a person is indispensable under rule 19(b),

the Court applies a three-part analysis." *Id.* (citing *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001)). "First, the Court determines, under rule 19(a), whether the party is a required or 'necessary' party." *Id.*

> A party is required if the party can be served with process, its joinder will not deprive the court of subject-matter jurisdiction, and:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Id.* (quoting Fed. R. Civ. P. 19(a)). WFB contends that Bryant's daughter, a co-owner of the 0238 checking account, has an interest in this action. (*See* Doc. 26 at 7.)

Bryant includes allegations regarding several unlawful transactions involving the 0238 checking account, including a transfer on September 11, 2015, and a withdrawal on April 22, 2016. (*See* 2d Am. Compl. at 9, 11.) She clarifies in a reply brief, however, that her claim for conversion concerns only the unlawful withdrawals from her savings account and not from her checking accounts. (*See* Doc. 31 at 6.) The Court finds that Bryant has waived any claim for conversion stemming from unauthorized withdrawals and/or transfers of funds from her checking accounts and will dismiss this part of her conversion claim with prejudice. Accordingly, the Court declines to grant WFB's motion on this issue.

### 2. The Account Agreement bars Bryant's claim for conversion in part.

WFB argues that Bryant's conversion claim is precluded by the Account Agreement. (Doc. 26 at 5.) The Account Agreement provides that if an account holder believes there is an error, they must notify the Bank "within 60 days of the date [the] Account statement is made available . . . ."

(Doc. 26-B at 4.) The Account Agreement further provides that the account holder "agree[s] not to assert a claim against [the Bank] concerning any error, forgery or other problem . . . unless [the account holder] notified [the Bank] of the [problem] within [60] Calendar Days after [the Bank] made [the] statement available . . . ." (*Id.*) Because Bryant raises this issue years after the alleged unlawful transactions, WFB argues that her claim is barred by the Account Agreement. (*See* Doc. 26 at 5.)

Bryant asserts that she never received many of her statements between December 2015 and April 2016. (*See* 2d Am. Compl. at 9; Doc. 31 at 5.) She states that in December 2015, the Bank—of its own accord—began sending her account statements to her previous address. (*See* 2d Am. Compl. at 9.) When she discovered this error in May 2016, she asked the Bank for duplicate statements. (*Id.*) The Bank gave her several printouts of the missing statements, but "many were missing[,]" including, presumably, the statements covering the December 8, 2015 and February 17, 2016 unauthorized withdrawals from her savings account. (*See id.*) Essentially, Bryant argues that her statements were never "made available" to her pursuant to the Account Agreement. WFB fails to address Bryant's allegations regarding the missing statements or the Bank's failure to provide printouts of those statements upon request. (*See* Docs. 26; 29.) The Court will not manufacture an argument on WFB's behalf and will, therefore, deny the motion to dismiss on this issue.

Bryant does *not* argue that statements relevant to any other unauthorized transactions were not made available to her. (*See id.*) As a result, the Court finds that Bryant waives any claim for conversion on allegedly unauthorized transactions other than the two withdrawals on December 8 and February 17. Thus, the Court will grant WFB's motion and dismiss in part Bryant's claim for

conversion based on any unauthorized transaction other than the December 8, 2015 or February 17, 2016 withdrawals.

        **3.**        **Bryant adequately alleges that a WFB employee converted the money.**

WFB contends that although Bryant "alleges that unnamed [Bank] employees allowed withdrawals from Bryant's account without her approval[, she] makes no allegation that any [Bank] employee continued to exercise dominion or control over such funds." (Doc. 26 at 6–7.) Because conversion is defined, in relevant part, as "the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights," *In the Matter of Yalkut*, 176 P.3d 1119, 1126 (N.M. 2008) (citation omitted), WFB argues that Bryant fails to state a claim for conversion. (*See* Doc. 26 at 6–7.) The Court disagrees with WFB's reading of the Second Amended Complaint. In discussing the December 8, 2015 and February 17, 2016 unauthorized withdrawals, Bryant asserts that "[t]he teller/manager? had increased the amount of the withdrawals and converted the funds to themselves or someone else." (2d Am. Compl. at 10.) Thus, Bryant sufficiently alleges that a WFB employee unlawfully altered the amount of her withdrawals and then exercised dominion and control over the money. (*See id.*) WFB's motion is denied on this issue.

        **C.**        **The Court will deny WFB's motion for a more definite statement.**

Finally, WFB asks the Court to order Bryant to provide a more definite statement under Federal Rule of Civil Procedure 12(e). (Doc. 26 at 9.) Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." WFB asserts that Bryant's complaint is vague or ambiguous because she "has failed to specify any act or omission on the part of a [Bank] employee which harmed her . . . ." (Doc. 26 at 9.) As the Court found

above, however, Bryant alleges that a teller or manager unlawfully "increased the amount of the [December 8 and February 17] withdrawals and converted the funds to themselves or someone else." (2d Am. Compl. at 10.) This is sufficient to put WFB on notice that Bryant alleges one of its employees from the Yuma branch converted funds from her savings account on two specific dates.

Bryant also alleges that WFB "should be charged $200,000 in punitive and compensatory damages due to their ratification of the tortious acts committed by their employees . . . ." (*Id.* at 14.) WFB argues that Bryant fails to "specify any act or omission on the part of [WFB] which amounts to ratification of those acts or omissions" and is a further basis to require Bryant to provide a more definite statement. (Doc. 26 at 9.) Yet Bryant makes several allegations related to her theory of how WFB "ratified" or may otherwise be liable for its employee's conduct. She alleges that WFB was required to utilize certain "'key controls' such as password, logging, managerial oversight (including approval signatures) and other safeguards" but failed to do so, resulting in the conversion of funds from her savings account. (*See* 2d Am. Compl. at 7.) She also asserts that, pursuant to an unspecified rule or policy, "[a] prior request of up to a week must be made for such a large withdrawal[,]" which she did not make. (*Id.*) Finally, she asserts that WFB was required to file a "transaction report . . . with the IRS as per 31 CFB. Section X, 1010.310-3147[.]" (*Id.*) Again, the Court finds that Bryant has alleged facts sufficient to put WFB on notice of her theory of ratification or respondeat superior. The Court will deny the motion on this basis.

**THEREFORE,**

**IT IS ORDERED** that Defendant Washington Federal's Motion to Dismiss Complaint or, in the Alternative, Motion for More Definite Statement (Doc. 26) is **GRANTED in part**: the Court dismisses with prejudice Bryant's conversion claim to the extent it is based on any transaction

other than the December 8, 2015 and February 17, 2016 withdrawals. The motion is otherwise **DENIED**.

    **IT IS FURTHER ORDERED** that Bryant's Motion for Default Judgment (Doc. 27) is **DENIED**.

    **IT IS FURTHER ORDERED** that Bryant's Motion for Extension of Time (Doc. 37) is **GRANTED**.

                                                                                   _____
                                                                                   ROBERT C. BRACK
                                                                                   SENIOR U.S. DISTRICT JUDGE